THOMAS G. CORNELIUS, ET AL., *v.* B. K. TULLY.

[Kentucky Law Reporter, Vol. 2—204.]

**Right of Church to Borrow Money.**

> The deed to a church declared that the land should be held for the use of the members of the church according to the rules and discipline agreed upon and adopted by the ministers of the church at their general conference; and one of the rules adopted is that if the trustees holding the property for church purposes have advanced money or become responsible for such money, and pay it, they may sell or mortgage the property to pay or secure the debt. It is held that the church property is liable for a debt due a trustee who has paid the contractor for erecting the church and where the trustees were required to borrow money to pay such contractor and have to pay interest thereon, the interest becomes a proper charge upon said church also.

APPEAL FROM LOGAN CIRCUIT COURT.

December 14, 1880.

OPINION BY JUDGE COFER:

The erection of the church building was directed by the proper authorities of the church. No limitations or restrictions were placed on the building committee. They had power to erect the house they did erect; it has been regularly received; and the record does not show that any person, lay or official, objected on the ground that the house was finer or more expensive than was authorized or desired, until long after it was completed and paid for.

The debt to the appellee may not have been contracted with the consent of the church authorities, but the debt to H. B. Tully was so contracted. The appellee was one of the trustees and a member of the building committee, and had the right to pay the debt of the

church to the contractor and thereby make the church his debtor. The provision of the Book of Discipline quoted in the petition, and admitted in the answer, authorizes the trustees to mortgage the property to pay the debt, or to sell it for that purpose. This they refused to do, and they now insist that the courts have no power to enforce the payment of the debt, because the land on which the house stands is dedicated, by the deeds under which it is held, to the worship of God.

The deed declares the land shall be held for the use of the members of the church "according to the rules and discipline which from time to time may be agreed upon and adopted by the ministers and preachers of the said church at their general conference," etc. One of these rules is that if the trustees holding property for church purposes have advanced money, or shall be responsible for any sum of money on account of church property, and shall pay it, they may sell or mortgage the property to pay or secure the debt. This made it the duty of the trustees to sell or mortgage the property to pay or secure the debt, if any, due to the appellee, and having failed to do so the chancellor will treat as done that which ought to have been done, and enforce the debt against the property as though a mortgage had been made.

June 11, 1873, the building committee borrowed of a bank in Russellville $2,000, and paid it to the contractor, and in July, 1874, the appellee and others borrowed of Miller $1,213.33 in gold, for which they gave their note bearing ten per cent. interest. The gold was sold and the proceeds applied as payment on the debt to the bank which was bearing interest at the rate of twelve per cent. The appellee has paid off that note, and he also paid off the balance of a note given by the building committee to the contractor, amounting to $159.95. These sums constitute the basis of his claim.

But it is contended that the building committee had no authority to borrow money and pay interest, and that, deducting the amount subscribed and collected to pay for the building from its costs, there is only a small balance remaining unpaid, if anything, and that the committee must lose the interest paid by them on borrowed money. It is also contended that the appellee did not pay his own subscription of $600 until long after it was due, and that this failure made it necessary, if it was necessary at all, to borrow money, and that even if the committee had authority to borrow money the appellee ought

to lose the interest, payment of which was made necessary by his default in paying his subscription.

The contract for building the house was made April 30, 1873. The work was to be commenced May 12, and to be finished as soon as practicable. The price was to be paid in weekly instalments as the work progressed, except 25 per cent., which was to be paid when the work was completed. The work was completed prior to March 28, 1874, when the house was received, and the committee's note given for $745, the balance remaining unpaid. The subscriptions were payable one-fourth on September 1, 1872, one-fourth December 1, 1872, one-fourth March 1, 1873, and one-fourth June 1, 1874.

There is nothing in the record showing when the several subscriptions were collected, and in the absence of such showing it ought to be assumed that the building committee acted honestly and faithfully, that enough was not collected to meet their obligation to the contractor, and that they borrowed the money from the bank because the subscribers did not pay in their subscriptions as fast as the money was required. The members of the committee were themselves large subscribers; they were members of the church, and had no interest to increase the cost of the building by unnecessarily borrowing money at a high rate of interest, if they had money in hands with which to meet their obligations to the contractor.

The appellee paid off the note given by the building committee to the contractor. When this was done does not appear, but the church has never paid any interest on it, and none is claimed except on the balance after deducting from it the $53 the contractor owed the church, and $532.10, balance of appellee's subscription. So, if appellee was in default at all, it was only as to $532.10, from March 1, 1873, when the whole became due, to March 28, 1874.

But no money was borrowed until in June, 1873, and if the accounts for interest on the sum of $532.10, at the same rate that was paid to the bank from the time the money was borrowed, to March 28, 1874, no hardship or loss will result from his failure to pay his subscription when due. The circuit court allowed him for interest on borrowed money at six per cent. The evidence shows that ten per cent. was paid. The appellants complain that any interest was allowed, and the appellee by cross-appeal complains that he was not allowed all the interest paid.

If it had been shown that the subscriptions had been or ought to

have been collected in time to meet the demands of the contractor, or if there was evidence sufficient to show that the committee acted recklessly or unfaithfully, there might be strong reasons for refusing to permit them to charge the church with any part of the interest they have paid. But in the entire absence of such evidence, we agree with the counsel for the appellants that all or none of the interest paid should be allowed. Having contracted to pay the contractor weekly as the work progressed, they were bound in good faith to him to keep their promise, and a failure to do so might have subjected them or the church to heavy losses.

Under such circumstances it was their duty to borrow money, if it was not paid by the subscribers, and the right to pay interest was a legal incident to the right to borrow. The court should therefore have allowed as a charge against the church all the interest paid by the building committee to the bank, and by the appellee to Miller, deducting from it interest at the same rate on the balance of the appellee's subscription as before indicated.

The sums paid for steps and for stone slabs and washing down and penciling the walls should also be charged to the church. It may or may not be true that they were embraced in the contract to build the house. That is not a question now. The building committee recognized these things as extra work and paid for them.. The committee was the agent of the church, and it is bound by their action.

The purchase-money paid to Lyon was a debt of the church, and was paid out of the fund in the hands of the building committee, and reduced by that amount the sum remaining to pay to the contractor; and the appellee having advanced money by borrowing, it is difficult to see upon what principal of equity the church can refuse to reimburse him; and if this were not so, the debt to Lyon was a debt against the church property and has been paid by the committee, has not been reimbursed, and is a charge against the property under that portion of the discipline quoted above.

The private accounts between appellee and Henry Cornelius have nothing to do with this controversy. There is no proof of an agreement on the part of the committee or of appellee to accept his services in buying and driving cattle as payment of his subscription, and if the services be proved there was no error in rejecting the charge as against appellee, in this controversy between him and the church.

The statute quoted (Sec. 5, Chap. 13, Gen. Stat.) has no applica-

tion to a proceeding to subject church property to sale to pay the debts of the church. It only applies when the church or its trustees seek a sale for their own purposes.

The judgment is *affirmed* on the original and *reversed* on the cross-appeal, and the cause is remanded for judgment in conformity to this opinion.

· R. S. Brevier, for appellants.

· James H. Bowder, Charles S. Grubbs, for appellee.